UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                             Case No. 16-CR-64
                                        17-CR-160

RONALD VAN DEN HEUVEL,

        Defendant.

## ORDER GRANTING MOTIONS TO MODIFY
## RESTITUTION PAYMENT SCHEDULE

The court entered judgments of conviction against Ronald Van Den Heuvel sentencing him to prison and ordering him to pay restitution in both of the above-numbered cases. In case number 16-CR-64, Van Den Heuvel was convicted of conspiracy to commit fraud, sentenced to 36 months in the Bureau of Prisons (BOP), and ordered to pay $316,445.47 in restitution. Dkt. 184. In case number 17-CR-160, Van Den Heuvel was convicted of wire fraud, sentenced to 90 months in the custody of the BOP (to be served concurrently with the sentence in No. 16-CR-64), and ordered to pay $9,428,618.81 in restitution. Dkt. No. 150. Both judgments state that "unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of monetary penalties is due during imprisonment." Dkt. Nos. 184 at 6; 150 at 7. The judgments also provide that payment during the term of supervised release is to commence within 30 days after release from imprisonment. *Id.* As a condition of supervised release in each case, Van Den Heuvel was ordered to make payments toward any unpaid restitution in the amount $200 per month or 10% of his net earnings, whichever is greater. He was also ordered to apply 100% of his annual federal and state income tax refunds toward payment of restitution. Dkt. Nos. 184 at 4; 150 at 5. Finally,

both judgments also require the defendant, consistent with 18 U.S.C. § 3664(k), to "notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution."

These cases are currently before the court on the government's motions to modify the restitution payment schedule. In support of its motions, the government states that although Van Den Heuvel's anticipated release date from his 90-month prison term is May 26, 2025, the BOP has released him to "home confinement" pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (2020). According to the government, Van Den Heuvel is now living in Cheboygan, Michigan. Since Van Den Heuvel is no longer in custody, the government contends, he is able to work and should be paying restitution. Indeed, the government states "multiple witnesses have reported to the government that he is in fact earning money." No. 16-CR-64, Dkt. No. 269 at ¶ 4. In the government's view, these facts indicate a "material change" in Van Den Heuvel's economic circumstances within the meaning of 18 U.S.C. § 3664(k). Yet, Van Den Heuvel failed to notify either the court or the Attorney General of this change, nor has he made any restitution payments since his transfer to "home confinement." Based on these allegations, the government moves the court "to modify the restitution order in these cases to require Van Den Heuvel to begin paying restitution now, on the same terms as if he were on supervised release—i.e., 'not less than $200 per month or 10% of his or her net earnings, whichever is greater,' and '100 percent of his or her yearly federal and state tax refunds.'" *Id.* at 3. Van Den Heuvel was invited to respond to the government's motion but failed to do so.

The government's request is well-supported in the law. The same section that requires the defendant to report any material change in his economic circumstances to the court also provides

2

that upon receipt of such notification, "the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). The problem with the government's request, however, is that Van Den Heuvel is still in the custody of the BOP. "An inmate in home confinement remains in the custody of the Bureau." *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). Because Van Den Heuvel is still serving his sentence, albeit at his home, he is still under the supervision and control of the BOP, not the court. His term of supervised release has not yet commenced. As a result, the court has no ability to monitor any modified payment schedule. U.S. Probation has no authority to supervise Van Den Heuvel, and the court has no ability to revoke his supervision and return him to prison should he fail to pay pursuant to a modified schedule. The BOP "has plenary control over its inmates' placement." *Id.* Any enforcement would presumably have to take the form of a contempt proceeding that the government would have to initiate.

It would appear, however, that the government does have an alternative remedy. The BOP "does not need judicial permission to remit money from a prisoner's account, with or without the prisoner's assent." *United States v. Sawyer*, 521 F.3d 792, 794 (7th Cir. 2008). As the court explained in *Sawyer*, the BOP "has ample authority to set the terms on which inmates are held. Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch. *See* 28 C.F.R. § 545.11 and Program Statement P5380.08 (amended Aug. 15, 2005), which set out the details of the Inmate Financial Responsibility Program." *Id.* The Inmate Financial Responsibility Program requires that each inmate with financial responsibility for obligations, such as court-ordered restitution, develop a financial plan. 28 C.F.R. § 545.11(a)(2). The inmate, under the supervision of BOP

3

staff, is responsible for making satisfactory progress in meeting his financial responsibility plan and for providing documentation of these payments to unit staff. "Payments may be made from institution resources or non-institution resources." § 545.11(b). And where an inmate refuses to participate in the financial responsibility program or comply with the provisions of his financial plan, the BOP has discretion to take various actions, including placing the inmate in the "lowest housing status (dormitory, double bunking, etc.)." § 545.11(d)(7).

From the foregoing, it appears that it is the primary responsibility of the BOP, an arm of the Department of Justice, to determine the restitution payment schedule of those inmates in its custody. "Prisoners dissatisfied with a warden's administration of the Inmate Financial Responsibility Program may appeal within the Bureau of Prisons, *see* 28 C.F.R. § 545.11(d), and may be able to obtain judicial review of the Bureau's final decision under the Administrative Procedure Act. 5 U.S.C. § 702." *Sawyer*, 521 F.3d at 794. But that does not mean that the government and/or the victims of Van Den Heuvel's crimes are not entitled to seek alternative relief in the form of a modified payment schedule from the sentencing court upon notice that the defendant's economic circumstances have changed. Because the plain language of § 3664(k) expressly allows a modification under these circumstances, the government's motion will be granted. "A convicted criminal 'cannot escape his responsibility to restore his victims by hiding behind his sentencing order, not when he has the means to pay and not when the law provides a remedy that the government and the district court may act upon.'" *United States v. Tarnawa*, 26 F.4th 720, 725 (5th Cir. 2022) (quoting *United States v. Rand*, 924 F.3d 140, 143–44 (5th Cir. 2019)).

4

Based upon Van Den Heuvel's failure to respond to the government's motion and his income earning capacity as reflected in the Presentence Investigation Report, the court finds that the payment schedule ordered as a condition of supervised release is reasonable.

**IT IS THEREFORE ORDERED** that Van Den Heuvel is to begin making restitution payments within 30 days of the date of this order in the amount of $200 per month or 10% of his net earnings, whichever is greater.

**IT IS FURTHER ORDERED** that Van Den Heuvel is to pay as restitution 100% of his annual federal and state income tax refunds.

All payments should be made to either the Inmate Financial Responsibility Program or the Clerk of Court for the Eastern District of Wisconsin.

Dated at Green Bay, Wisconsin this 23rd day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge